UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA PARTRIDGE,

       Petitioner,

                            CASE NO. 05-CV-74616-DT
v.                         JUDGE DENISE PAGE HOOD
                            MAGISTRATE JUDGE PAUL J. KOMIVES

SUSAN DAVIS,

       Respondent.
_____/

**REPORT AND RECOMMENDATION**

RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.    *Procedural History*

Petitioner Brenda Partridge is a state prisoner, currently confined at the Huron Valley Women's Complex in Ypsilanti, Michigan. On October 4, 1985, petitioner was convicted of first degree criminal sexual conduct and assault with intent to do great bodily harm less than murder. On November 12, 1985, she was sentenced to concurrent terms of 25-50 years' imprisonment on the criminal sexual conduct conviction and 6½-10 years on the assault conviction. Petitioner claims that, since her incarceration, she has earned good time credits and has followed the recommendations provided by the Department of Corrections for facilitating her release, including earning her G.E.D., vocational training, ans substance abuse counseling.

Petitioner became eligible for parole on August 2, 2004. On March 2, 2005, petitioner was given a Notice of Intent to Conduct a Parole Interview. On April 5, 2005, petitioner was interviewed

by Parole Board member Charles E. Braddock. The Parole Board issued its decision on April 20, 2005. Contrary to the parole guidelines, which suggested petitioner was eligible for release, the Board continued petitioner's incarceration for 18 months. As reasons for its departure from the guidelines, the Board explained: "During Parole Board interview the [prisoner] fails to comprehend her level of responsibility for her offense. The Parole Board is not assured that [prisoner's] risk of reoffending has been diminished. Unwilling to parole at this time." Pet'r's Br., Ex. E. Pursuant to state law, this decision is final and not appealable by petitioner. *See* MICH. COMP. LAWS § 791.234(11).

On December 6, 2005, petitioner filed this application for the writ of habeas corpus challenging the Board's denial of parole. As grounds for the writ, petitioner raises three claims:

    I.    STATUTE IS CONTRACT WHEN LEGISLATIVE INTENT IS CLEARLY EXPRESSED TO GRANT PRIVATE RIGHTS TO A PARTY BASED UPON THAT PARTY'S PERFORMANCE.

    II.    THE PRIVATE RIGHT CONFERRED BY THE COMPULSORY LANGUAGE OF THE STATUTE/CONTRACT IS A PRIVATE RIGHT TO DUE PROCESS BASED UPON A LIBERTY INTEREST CONTINGENT UPON A PARTY'S PERFORMANCE AND IS ENTITLED TO ENFORCEMENT.

    III.    THE MICHIGAN PAROLE BOARD VIOLATED CONSTITUTIONAL <u>EX POST FACTO</u> PROHIBITIONS WHEN IT RELIEF SOLELY UPON HISTORICAL FACTORS TO DENY PAROLE.

Respondent filed an answer to the petition on March 14, 2006. Respondent contends that petitioner's claims are without merit or not cognizable on habeas review. Petitioner filed a reply on April 28, 2006.

E.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, her petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In her brief, respondent argues that this deferential standard of review applies to petitioner's claims. In reply, petitioner argues that this standard does not apply because her claims were never adjudicated on the merits in a state court proceeding. The Court should agree with petitioner. By its terms, the AEDPA standard of review applies to "any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Here, petitioner's claims were not adjudicated on the merits in state court, because state law provides no state court avenue of review for petitioner's claims. Because petitioner's claims were not adjudicated on the merits in state court, the AEDPA standard of review codified in § 2254(d) is inapplicable, and the Court should review petitioner's constitutional claims *de novo*. *See Linscott v. Rose*, 436 F.3d 587, 592 (6th Cir. 2002).

C. *Analysis*

  1. *Contractual Right to Parole*

In her first two claims, petitioner contends that Michigan statute and administrative rules

create a contractual right to parole which she was denied. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

In making her argument, petitioner suggested in her initial brief that the parole statutes create a protected liberty interest in parole. In her reply, however, petitioner expressly disavows any argument that she has a liberty interest in parole enforceable under the Due Process Clause. This disavowal is appropriate as it is clear that petitioner has no liberty interest in being released on parole. The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. amend XIV, § 1. By its terms, therefore, the particular procedures required by the clause apply only to deprivations of "life, liberty, or property;" they do not apply to deprivations of other interests. *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). In this case, petitioner has no liberty or property interest in being released on parole, and thus the Due Process Clause does not require the state to follow any particular procedures.

"A liberty interest can arise in one of two ways: (1) from the Due Process Clause itself; or (2) from a state or federal statute." *Ho v. Greene*, 204 F.3d 1045, 1058 (10th Cir. 2000). *See generally*, *Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). As to the first, of its own force "[t]he [D]ue [P]rocess [C]lause does not guarantee an inmate a right to parole." *Marshall v. Mitchell*, 57 F.3d 671, 672 (8th Cir. 1995); *accord Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979); *Mayberry v. Hudson*, No. 92-2358, 1993 WL 147575, at *1 (6th Cir. May 5, 1993) (citing *Greenholtz* and *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987)). Thus, petitioner has a protected liberty interest only if Michigan law creates such an interest. In the parole context,

4

whether a state law creates a protected liberty interest "turn[s] on the presence or absence of language creating 'substantive predicates' to guide discretion." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462 (1989). Thus, to create a liberty interest the regulations at issue must "contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow[.]" *Id.* at 463; *accord Marshall*, 57 F.3d at 672. Under Michigan law, "a prisoner's release on parole is discretionary with the parole board." MICH. COMP. LAWS § 791.234(8); *see also*, *People v. Moore*, 164 Mich. App. 378, 387-88, 417 N.W.2d 508, 512 (1987). Thus, "Michigan's state statutes do not create an explicit entitlement to parole," and thus do not give rise to a protected liberty interest. *White v. Kelly*, 82 F. Supp. 2d 1184, 1189 (D. Colo. 2000) (considering federal prisoner's challenge to denial of parole hearing by Michigan authorities); *accord Mayberry*, 1993 WL 147575, at *1 (same); *Canales v. Gabry*, 844 F. Supp. 1167, 1171 (E.D. Mich. 1994) (Gilmore, J., adopting Report of Morgan, M.J.) (same); *cf. Marshall*, 57 F.3d at 672-73. As the Sixth Circuit has explained:

> After *Olim* [*v. Wakinekona*, 461 U.S. 238 (1983)] and *Inmates* [*of Orient Correctional Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233 (6th Cir. 1991)], it became clear that procedural statutes and regulations governing parole do not create federal procedural due process rights[.] . . . The Michigan procedural limitations do not detract from the broad powers of the Michigan authorities to deny parole. So long as the parole discretion is broad, as in Michigan, "the State has not created a constitutionally protected liberty interest" by enacting procedural rules. *Olim*, 461 U.S. at 249. The parole authorities of the State of Michigan may have been required to follow their own procedural statutes and regulations on parole . . . as a matter of *state* law, but there is not now any viable legal theory by which Michigan state authorities are required to follow such rules as a matter of *federal* due process.

*Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc) (footnote and parallel citation omitted) (emphasis in original); *see also*, *Moore v. Hofbauer*, 144 F. Supp. 2d 877, 882 (E.D. Mich. 2001) (Tarnow, J.).

5

Thus, it is clear that petitioner has no liberty interest in parole which is protected by the Due Process Clause. Attempting to circumvent this conclusion, petitioner argues that Michigan statutes and regulations vested in her a contractual right to parole, the denial of which constituted an impairment of contract. In support of her claim, petitioner relies on the Contracts Clause of Article I of the Constitution, which provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. CONST. art. I, § 10, cl. 1. Although a statute is generally not a contract for purposes of the Contracts Clause, the Supreme Court has explained that "a statute is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State." *United States Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 17 n.14 (1977). In other words, "a legislative enactment may contain provisions which, when accepted as the basis of action by individuals, become contracts between them and the State." *Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 100 (1938). However, as the Supreme Court has more recently explained,

> absent some clear indication that the legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state.

*National R.R. Passenger Corp. v. Atchison, T. & S.F. Ry. Co.*, 470 U.S. 451, 465-66 (1985) (citations omitted) (quoting *Dodge v. Board of Education*, 302 U.S. 74, 79 (1937)). "Thus, the party asserting the creation of a contract must overcome this well-founded presumption," and "absent 'an adequate expression of an actual intent' of the State to bind itself, this Court simply will not lightly construe that which is undoubtedly a scheme of public regulation to be, in addition, a private contract to which the State is a party." *Id.* at 466-67 (citations omitted) (quoting *Wisconsin &*

*Michigan R. Co. v. Powers*, 191 U.S. 379, 386-387 (1903)).

Relying on this body of law, petitioner argues that several Michigan statutes and regulations contain provisions evincing an intent to create contractually enforceable rights. Because she took actions in accordance with these provisions, petitioner claims, the state's refusal to grant her parole constituted an unconstitutional impairment of the obligation of contracts. Because the statutes and regulations upon which petitioner relies do not express "actual intent of the State" to bind itself, and because petitioner has presented nothing else to overcome the presumption that the statutes and regulations merely establish a scheme of public regulation, the Court should reject petitioner's claim.

Petitioner first points to MICH. COMP. LAWS § 791.233, which in relevant part provides:

> Except as provided in section 34a, and notwithstanding the provisions of subdivision (b), a parole shall not be granted to a prisoner other than a prisoner subject to disciplinary time sentenced for the commission of a crime described in section 33b(a) to (cc) until the prisoner has served the minimum term imposed by the court less an allowance for disciplinary credits as provided in section 33(5) of 1893 PA 118, MCL 800.33.

MICH. COMP. LAWS § 791.233(1)(c). Petitioner contends that the statute's command that parole "shall not" be granted "until" the prisoner has served the minimum term creates an expectation that parole "shall" be granted "when" the prisoner has served the minimum term. Petitioner's argument is misplaced, for several reasons. First, the statutory language merely provides a minimum time before which parole may even be considered; nothing in the language suggests that once this minimum term has been served parole is assured. Indeed, such a conclusion would convert Michigan's indeterminate sentencing scheme into a determinate scheme, because a prisoner would be entitled to automatic release once the minimum term has been served. Second, petitioner's argument is belied by subsection (1)(a) which provides, in addition to the limitation set forth in

7

subsection (1)(c), that "[a] prisoner shall not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." MICH. COMP. LAWS § 791.233(1)(a). Finally, even if petitioner's interpretation of the statute were correct, nothing in the language evinces an intent by the Michigan Legislature to create contractual rights enforceable by prisoners, rather than a regulatory scheme controlling state officials in their administration of the parole laws.

Petitioner next points to MICH. COMP. LAWS § 791.233e and the parole guidelines issued pursuant to that provision. Section 791.233e directs that the department of corrections "shall develop parole guidelines . . . that shall govern the exercise of the parole board's discretion[.]" MICH. COMP. LAWS § 791.233e(1). Pursuant to this statutory command, the Department of Corrections has promulgated parole guidelines which consider various factors to reach a parole "probability" of low, average, or high. *See* MICH. ADMIN. CODE R. 791.7716. Petitioner contends that because her actions while incarcerated resulted in her scoring a "high probability" of parole, and because § 791.233e mandates the board's discretion be governed by these guidelines, she had been denied a contractually enforceable right. This claim is likewise without merit. First, the claim is untenable in light of the explicit language in both the statute and the administrative rule which permits the board to depart from the guidelines for substantial and compelling reasons. *See* MICH. COMP. LAWS § 791.233e(6); MICH. ADMIN. CODE R. 791.7716(5). Second, again nothing in the language of the statute or regulation suggests that the legislature intended to create a private contractual right, rather than a regulatory scheme controlling the actions of state officials.

In addition, any doubt concerning the legislature's intent here is dispelled by the parole

statute's explicit command that "a prisoner's release on parole is discretionary with the parole board." MICH. COMP. LAWS § 791.234(11). The legislature's direction that parole is discretionary with the Parole Board belies any reading of the statutes which would create enforceable contract rights. In short, "neither the language of the [parole laws] nor the circumstances surrounding [their] passage manifest any intent on the part of [the Michigan Legislature] to bind itself contractually to [state prisoners]," *National R.R. Passenger Corp.* 470 U.S. at 470, and the parole statutes and regulations do not constitute a binding contractual obligation protected by the Contracts Clause. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

    2.    *Ex Post Facto*

In her third claim, petitioner contends that the Parole Board violated the Ex Post Facto Clause by relying solely on historical factors, such as the nature of the crime, in denying parole. From petitioner's brief, it appears that she is principally arguing that the Board's consideration of historical factors itself constitutes an ex post fact violation. However, without further explanation petitioner also states in her brief that the Board's reliance on these historical factors "indicates a change in the parole release policy by retroactively applying amendments to Michigan's parole statutes to Petitioner." Pet'r's Br., at 18. Under either argument, petitioner's claim is without merit.

With respect to the use of historical factors, it is well established that a parole board may consider any information which bears on the parole decision, including historical factors such as the nature of the crime, the prisoner's remorse, and the like. *See Coady v. Vaughn*, 251 F.3d 480, 483, 487 (3d Cir. 2001); *Davis v. Thomas*, 256 F. Supp. 2d 190, 191 (S.D.N.Y. 2003); *Jennings v. Parole Bd. of Va.*, 61 F. Supp. 2d 462, 466 (E.D. Va. 1999), *aff'd*, 208 F.3d 209 (4th Cir. 2000) (unpublished op.). Thus, petitioner cannot show a constitutional violation based on the Board's

consideration of historical factors alone.

Petitioner also suggests that the Board's reliance on historical factors suggests that the board retroactively applied amendments to Michigan's parole statutes in violation of the Ex Post Facto Clause. Petitioner does not, however, identify what these amendments are, or how the standards differed between the old and new version of the statutes. As best as can be gleaned from her argument, petitioner is complaining not about a retroactive application of the parole statutes, but about a retroactive application of parole guidelines or Parole Board policies. Retroactive applications of this type, however, do not implicate the Ex Post Facto Clause. Particularly on point is the Second Circuit's decision in *Barna v. Travis*, 239 F.3d 169 (2d Cir. 2001). In that case, the prisoner argued that the Ex Post Facto Clause was violated by the application of amended parole guidelines in her case. The court rejected this argument, noting that the New York parole statutes gave the parole board complete discretion in granting or denying parole, and that the guidelines were, pursuant to statute, created by the board for the purpose of aiding in its exercise of discretion. *See id.* at 171. In light of this scheme, the court rejected the prisoner's ex post facto argument, explaining:

> Nor is there merit in plaintiffs' claims that State parole procedures adopted after they were incarcerated violate the Ex Post Facto Clause. That Clause applies only to "legislative action that retroactively 'punishes as a crime an act previously committed, which was innocent when done,' 'makes more burdensome the punishment for a crime, after its commission,' or 'deprives one charged with crime of any defense available according to law at the time when the act was committed.'" *Doe v. Pataki*, 120 F.3d 1263, 1272 (2d Cir.1997) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). A law that is merely procedural and does not increase a prisoner's punishment cannot violate the Ex Post Facto Clause even when applied retrospectively. *See California Dep't of Corrections v. Morales*, 514 U.S. 499, 507-09, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).
> The Ex Post Facto Clause does not apply to guidelines that do not create mandatory rules for release but are promulgated simply to guide the parole board in the exercise of its discretion. *See, e.g.*, *DiNapoli v. Northeast Regional Parole*

>*Commission*, 764 F.2d 143, 145-47 (2d Cir.), *cert. denied*, 474 U.S. 1020, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). Such guidelines "are not 'laws' within the meaning of the ex post facto clause." *Id*. at 147; *Beltempo v. Hadden*, 815 F.2d 873, 875 (2d Cir.1987) (quoting *DiNapoli* ).

*Id*.

Michigan's parole guidelines, like those of New York considered in *Barna*, were created by the Board pursuant to statute, and are designed to guide the Board in its exercise of discretion. And, like the New York parole statutes, "Michigan's parole statute does not create a protected liberty interest in parole because the statute does not place any substantive limitations on the discretion of the parole board through the use of particularized standards that mandate a particular result." *Johnson v. Renico*, 314 F. Supp. 2d 700, 712 (E.D. Mich. 2004) (Gadola, J.). Thus, for the reasons explained by the court in *Barna*, petitioner's ex post facto claim is without merit. *See also*, *Jonas v. Wainwright*, 779 F.2d 1576, 1577 (11th Cir. 1986); *cf*. *Shabazz v. Gabry*, 123 F.3d 909, 915 (6th Cir. 1997). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

D.      *Conclusion*

In view of the foregoing, the Court should conclude that Board's denial of petitioner's release on parole did not violate the Due Process Clause, Contracts Clause, or Ex Post Facto Clause. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of*

*Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                              s/Paul J. Komives
                                                              PAUL J. KOMIVES
                                                              UNITED STATES MAGISTRATE JUDGE

Dated: 12/15/06

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 15, 2006.
>
>                               s/Eddrey Butts
>                               Case Manager